# **EXHIBIT A**

## Master Services Agreement

THIS MASTER SERVICES AGREEMENT is made and entered into as of _____8/10/2021_____ (this "Master Agreement" or this "Agreement"), between **JUICE Creative Group, LLC** ("JUICE"), a Delaware limited liability company having its corporate offices at 67 Wall Street, Norwalk CT  and **Uncommon Good, INC**, ("Client") having its principal place of business at __67 Holly Hill Ln. Greenwich CT 06830·

WHEREAS, JUICE has developed experience in providing marketing and advertising services including; digital media marketing, web design, branding, photography and other advertising and marketing services. WHEREAS, Client desires to engage JUICE to provide certain advertising and marketing services, and JUICE desires to provide such services to Client.

NOW, THEREFORE, in consideration of the premises and mutual promises hereinafter set forth, JUICE and Client do mutually agree as follows:

### ARTICLE 1
### TERMS

**Section 1.1**     This Master Agreement shall begin as of the date first written above and, unless sooner terminated as provided herein, shall remain in full force and effect for a period of three (3) months from such date, or until 30 days after the completion of the latest "Statement of Work," whichever term shall be shorter. The starting date of JUICE personnel, and the period of performance for each project, shall be specified in each Statement of Work (as defined below).

### ARTICLE 2
### STATEMENTS OF WORK

**Section 2.1**     This is a Master Agreement, the provisions of which apply to all services provided to Client by JUICE. Pursuant to specific statements of work (Including where applicable, without limitations to services commenced prior to the date hereof), and all Attachments, Schedules and other service or purchase orders (collectively, "Statements of Work").  Each individual Statement of Work shall be executed by the parties and shall become an Addendum to this Master Agreement subject to all of the terms and provisions hereof. The terms of this Master Agreement shall be incorporated into each such Statement of Work by this reference. Upon execution of each Statement of Work by each of JUICE and Client, JUICE shall provide to Client the professional advertising and marketing services described in accordance with the schedule specified therein.

**Section 2.2**     It is understood and agreed by the parties that JUICE may use subcontractors and affiliates, as well as JUICE employees to perform the services identified in each Statement of Work.  No further approval from Client is required for JUICE to use subcontractors and/or affiliates as may be needed at the discretion of JUICE.  Pricing for each Statement of Work shall include the cost of such subcontractors and affiliates, unless identified separately and previously agreed by Client. JUICE shall remain responsible for the performance of each subcontractor and/or affiliate and their respective employees as if they were JUICE's own employees.  Nothing contained in this Agreement or in any Statement of Work or addendum thereto shall create a contractual or employment relationship between Client and any JUICE subcontractor, affiliate or any of their respective employees used in the performance of services set forth in a Statement of Work.

## ARTICLE 3
## PRICES

**Section 3.1**     Client shall pay JUICE the fees, prices and other charges specified in each Statement of Work which will be incorporated into this Master Agreement as though fully set forth herein.

## ARTICLE 4
## CLIENT RESPONSIBILITIES

**Section 4.1**     Client shall cooperate with JUICE by providing access to all information, materials, personnel, and equipment as may be reasonably necessary for JUICE to perform it's services hereunder in a timely fashion, and Client shall comply with reasonable requests of JUICE that relate to JUICE 's performance of services hereunder.

## ARTICLE 5
## INVOICING AND PAYMENT

**Section 5.1**     JUICE shall submit invoices to Client on a monthly basis unless otherwise provided in the applicable Statement of Work. Payment shall be made to the address on the invoice.  Client hereby designates Red Coral LLC as its representative for billing purposes. Clients may change such designation upon 10 days prior written notice to JUICE.

**Section 5.2**     Client shall make payment to JUICE within thirty (30) days after receipt of JUICE 's invoice unless otherwise provided in the applicable statement of work.  All invoices shall be deemed accepted unless disputed in good faith in writing within fifteen (15) days after receipt thereof. If an invoice is disputed, Client shall pay the undisputed portion of the invoice when due. Invoices will be emailed the last day of the previous month, or first of each month. All payments due under this Agreement to JUICE shall be made by bank wire transfer via routing number, bank transfer via quick book, credit card processor, fees will be charged to Client.

**Section 5.3**     Client shall pay JUICE interest at the rate of one percent (1%) per month (or part thereof), or if lower, at the maximum rate permitted by applicable law, on any undisputed amount not fully paid within thirty (30) days after Client's receipt of JUICE 's invoice.  Such interest shall continue to accrue until any unpaid amount is fully paid.

## ARTICLE 6
## TERMINATION

**Section 6.1**     **By JUICE** – Client's failure to make payment on undisputed invoices as provided herein shall be considered a material breach of this Agreement and, notwithstanding any other rights or remedies otherwise available to JUICE hereunder, shall entitle JUICE to terminate this Agreement upon written notice to Client.  JUICE 's right to terminate for non-payment is in addition and without prejudice to all other rights and remedies otherwise available to JUICE, including, without limitation, JUICE 's right to collect the outstanding amount owed to JUICE plus interest on amounts not fully paid within thirty (30) days after Client's receipt of JUICE 's invoice.

**Section 6.2**     **By Client or JUICE** – Either party may terminate this Agreement or any Statement of Work, with or without cause, upon thirty (30) days prior written notice to the other party.  In the event of any such termination, the Client shall promptly pay to JUICE, in accordance with Article 5, Section 5.3 above, the

outstanding amount owed to JUICE plus interest on amounts not fully paid within thirty (30) days after Client's receipt of JUICE 's invoice.

## ARTICLE 7
## WARRANTY

**Section 7.1**   JUICE DOES NOT MAKE ANY, AND SPECIFICALLY DISCLAIMS ALL, EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS OR GUARANTEES REGARDING THE SERVICES OR PRODUCTS DESCRIBED IN ANY STATEMENT OF WORK OTHER THAN THOSE EXPRESSLY CONTAINED IN THIS AGREEMENT OR IN AN APPLICABLE STATEMENT OF WORK, AND JUICE DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## ARTICLE 8
## TAXES

**Section 8.1**   The Client shall be liable for all taxes (other than taxes on JUICE's income) applicable to any products or services purchased or received from JUICE pursuant to this Agreement.  JUICE's price includes only those taxes and the amount identified explicitly in each Statement of Work attached hereto.  The Client shall be liable for any other taxes that may be levied on the goods and services provided under this Agreement (or the use thereof) and for any increases of the taxes identified in each Statement of Work.

## ARTICLE 9
## ACCEPTANCE

**Section 9.1**   Unless otherwise provided in a Statement of Work, upon completion of the services specified in each Statement of Work and final delivery of the results of such services to Client, Client shall have no more than fourteen (14) days to complete final acceptance testing and shall notify JUICE in writing no later than at end of such 14-day period of any non-compliance of the results of the services with the applicable specifications therefore set forth in the Statement of Work. If Client notifies JUICE of any such non-compliance within the applicable period of time, JUICE and Client shall jointly determine a reasonable cure period for re-delivery and testing. Failure of Client to notify JUICE of non-compliance within the 14-day acceptance period shall be deemed automatic and final acceptance of all results of the specified services. Any amounts due and owing at such time shall be due and payable immediately.

**Section 9.2**   Title to any products procured by JUICE from third parties in connection with this Agreement shall not vest in Client until such time as payment for such products is received and collected by JUICE.

## ARTICLE 10
## FORCE MAJEURE

**Section 10.1**   Neither party shall be liable or deemed to be in default for any delay or failure in performance under this Agreement or interruption of service resulting directly or indirectly by reason of fire, flood, earthquake, explosion or other casualty, strikes or labor disputes, disruptions of telecommunication systems, inability to obtain supplies or power, war or other violence, any law, order, proclamation, regulation, ordinance, demand or requirement of any government agency, or any other act or condition whatsoever beyond the reasonable

control, fault or negligence of the affected party; provided the party so affected shall resume performance with dispatch whenever such causes are removed.

## ARTICLE 11
### LIMITATION OF LIABILITY

**Section 11.1**   IN NO EVENT SHALL JUICE'S LIABILITY TO CLIENT FOR DAMAGES RESULTING FROM ANY CLAIMS ARISING FROM OR RELATING TO ANY ACTS OR OMISSIONS OF JUICE IN THE PERFORMANCE OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, LIABILITY FOR PATENT, COPYRIGHT OR OTHER INTELLECTUAL PROPERTY INFRINGEMENT, EXCEED THE TOTAL AMOUNT OF COMPENSATION RECEIVED BY JUICE UNDER THE PARTICULAR STATEMENT OF WORK TO WHICH SUCH CLAIMS OR DAMAGES RELATE.  NOTWITHSTANDING THE FOREGOING, JUICE 'S LIABILITY WITH RESPECT TO A DEFECTIVE DELIVERABLE  SHALL BE LIMITED EXCLUSIVELY TO REPLACEMENT, REPAIR, OR MODIFICATION OF SUCH DELIVERABLE.

**Section 11.2**   No claim, suit, or action, regardless of form, arising from or relating to JUICE's acts or omissions in the performance of this Agreement may be brought or asserted more than three (3) months after the cause of action has occurred.

**Section 11.3**   Without prejudice to the generality of the foregoing, Client is responsible for the repair, maintenance, and all insurance against loss of Client's equipment, and JUICE shall not be liable for any loss of or impairment to the services provided hereunder or damages to any equipment due in whole or in part to a malfunction or defect in Client's equipment.

**Section 11.4**   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, EXCEPT AS EXPRESSLY SET FORTH HEREIN, NEITHER PARTY SHALL, UNDER ANY CIRCUMSTANCES, BE LIABLE TO THE OTHER PARTY, ANY OF ITS CUSTOMERS, END USERS, SITE VISITORS, AFFILIATES OR ANY OTHER PERSONS FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSSES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, LOSS OF DATA OR THE LIKE), WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF A PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN.

## ARTICLE 12
### INDEMNITY

**Section 12.1**   Each party ("Provider") will defend, indemnify and hold harmless the other party ("Recipient") from and against any and all claims, suits, actions, losses, liabilities, damages, costs and expenses (including, but not limited to, costs of investigation and reasonable attorneys' fees) (collectively, "Losses") incurred by Recipient based upon, arising out of, attributable to or resulting from a claim that any information, design, specification, instruction, software, data, or material furnished by the Provider ("Material") and used by the Recipient in connection with either the provision or the receipt of the services hereunder infringes or otherwise violates a copyright, trademark, patent, trade secret or other intellectual property right, or any other right of a third party (including, without limitation, the right of privacy or publicity) provided that: (a) the Recipient notifies the Provider in writing within thirty (30) days of the claim (or sooner if the nature of the claim so requires); (b) the

Provider has sole control of the defense and all related settlement negotiations provided, however, that no settlement that provides for injunctive or other non-monetary relief or that does not include a complete and unconditional release of the Recipient from all liability with respect to such claim shall be effected by the Provider without the prior written consent of the Recipient, which consent shall not be unreasonably withheld or delayed; and (c) the Recipient provides the Provider with the assistance, information, and authority reasonably necessary to perform the above; reasonable out-of-pocket expenses incurred by the Recipient in providing such assistance will be reimbursed by the Provider.  The Provider shall have no liability for any claim resulting from: (i) the Recipient's use of a superseded or altered release of some or all of the material if the infringement would have been avoided by the use of a subsequent unaltered release of the material which is provided to the Recipient; or (ii) any information, design, specification, instruction, software, data, or material not furnished by the Provider.  In addition, Client shall defend, indemnify and hold harmless JUICE from and against any and all Losses incurred by JUICE based upon, arising out of, attributable to or resulting from the development, operation, or maintenance of Client's web site(s), Client's advertising or marketing campaigns or methods, or any of its business practices (including, without limitation, any conduct, actions or omissions by third parties in relation to any of the foregoing), except for claims subject to indemnification by JUICE as Provider pursuant to the first sentence of this Section 12.1.

## ARTICLE 13
## CONFIDENTIALITY AND NONDISCLOSURE

**Section 13.1**  By virtue of the relationship contemplated by this Agreement, each party may have access to confidential or proprietary information to the other party ("Confidential Information").  Confidential Information shall include, without limitation, any JUICE program licenses, JUICE's and, Client's Intellectual Property (as defined below). All information that would reasonably be considered confidential, including but not limited to Client's and JUICE's employees, organization, activities, policies, or products and including any written reports, proposals, presentations, findings, conclusions, recommendations, or reporting data and analysis prepared by JUICE and provided to Client under this Agreement. It is the express intent of this Section that neither party disclose to any third party any information it learns concerning the business of the other party in the performance or receipt of services hereunder.

**Section 13.2**  A party's Confidential Information shall not include information that (a) is or becomes a part of the public domain through no act or omission of the other party, or (b) was in the other party's lawful possession prior to the disclosure and had not been obtained by the other party either directly or indirectly from the disclosing party, or (c) is lawfully disclosed to the other party by a third party without restriction on disclosure, or (d) is independently developed by the other party.

**Section 13.3**  Both during the term of this Agreement and for a period of two (2) years after termination of this Agreement, the parties agree to hold each other's Confidential Information in confidence.  The parties agree not to make each other's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purpose other than the implementation of this Agreement. However, each party may disclose Confidential Information in accordance with a judicial or other governmental order provided that such party shall give the Disclosing Party written notice and the opportunity to seek confidential treatment of the information prior to such disclosure. Each party agrees to use the same degree of care that it uses to protect its own Confidential Information of a similar nature and value, but in no event less than a reasonable standard of care, to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the provisions of this Agreement.  Each party represents that it has, with each of its employees who may have access to any Confidential Information, an appropriate Agreement sufficient to comply with all of this Article's terms.

**Section 13.4**  Without prejudice to the rights and remedies otherwise available to either party, a party shall be entitled to equitable relief by way of injunction or otherwise if the other party breaches or threatens to

breach any of the provisions of this Article 13, without the necessity of proving irreparable harm or posting a bond or additional security.

## ARTICLE 14
## OWNERSHIP RIGHTS

**Section 14.1** Except as otherwise specifically provided below or in a Statement of Work, each party shall retain all right, title, and interest in and to such party's Intellectual Property and all improvements, modifications, enhancements and derivative works and any Intellectual Property developed or created by such party in connection with performing its obligations hereunder, and all copies and embodiments thereof, including all rights in know-how, copyrights, trademarks, patents, patent applications (including reissues, renewals, continuations, continuations-in-part, or divisions of any patent or patent application), trade secrets, instructions, improvements, modifications and all proprietary information relating to such party's products and services (collectively, all of the foregoing, "Intellectual Property"). Without limiting the generality of the foregoing, Client shall not (i) decompile, reverse engineer, disassemble, or otherwise attempt to discover the source code of any deliverable or other product or software of JUICE, (ii) reduce any deliverable, or other product or software of JUICE to a human-perceivable form, or (iii) adapt, modify, sublicense, rent, lease, resell for profit, distribute (except as may be otherwise provided in a Statement of Work) or create derivative works based on any deliverable or any component software code. Each party agrees that it shall not at any time apply for any registration of any patent, copyright or trademark, or other designation, which would affect the other party's exclusive ownership of such other party's Intellectual Property, or file any document with any government authority or take any action, which would adversely affect such other party's exclusive ownership thereof.

**Section 14.2** Without limiting the generality of this Article 14, JUICE's Intellectual Property shall include any pre-existing Intellectual Property of JUICE, including, without limitation, the following: (i) any programming or code objects or methods that are used in developing or that are embodied in the Client's Intellectual Property ("Objects"); or (ii) any Tools developed by or on behalf of JUICE ("Tools" shall refer to software code and/or a portion of code that: (a) accelerates the pace of application development; or (b) accelerates the data conversion process; or (c) is a component part of the Client's Intellectual Property that, in its generic form, may have general usefulness in a variety of other software programs or programming applications). JUICE grants to Client a worldwide, nonexclusive, non transferable, royalty-free, perpetual, internal use object (executable) code only license to use such Objects, Tools and JUICE's Intellectual Property that are incorporated into the Client's Intellectual Property to maintain the Client's Intellectual Property. Nothing in this paragraph shall be deemed to permit the Client to transfer JUICE Intellectual Property to a subsidiary or other affiliate without the prior written consent of JUICE. Nothing herein shall be deemed to transfer rights for any Client Confidential Information to JUICE. Without limiting the generality of this Article 14, Client's Intellectual Property shall include all Intellectual Property Rights that are or relate to Client Assets, Client Information, Client Systems, Client Materials (including, but not limited to, branding, marketing, trademarks, copyrights).

**Section 14.3** In addition, Before accepting a business engagement relating to a new client in the NPO space, a client creating a product that could be used by businesses in the NPO space, or a client in the freelance marketing and/or project management space, JUICE will seek Client's written agreement to be provided by Client within 15 business days from JUICE's notification by email of Client and not to be unreasonably withheld.

**Section 14.4** JUICE and Client acknowledge and agree that during the course of JUICE's performance of services hereunder, both parties and their respective employees and agents may acquire or become acquainted with Residuals (as defined below). Subject to the provisions of Article 13 and this Article 14, JUICE and Client shall be entitled to freely use and otherwise employ such Residuals in the furtherance of their respective business

Case 3:22-cv-01175-JCH   Document 1-1   Filed 09/16/22   Page 8 of 11

DocuSign Envelope ID: 187FDB08-FFBE-4492-AF51-179B9CA54D9B

activities, including the provision of services by JUICE to its other customers. Nothing herein shall be construed to permit either party to use the other's confidential business information. "Residuals" means general: (i) data processing ideas, (ii) written documentation or other materials prepared by a party, provided they do not constitute Confidential Information or Intellectual Property of the other party, (iii) marketing and other concepts, (iv) aggregate data that is not specific to and does not identify the other party, and/or (v) training, knowledge or skills.

## ARTICLE 15
## HIRING OF EMPLOYEES

**Section 15.1** During the term of this Agreement and for a period of 12 months after termination of this Agreement, neither party shall, directly or indirectly, do any of the following with respect to any employees or subcontractors of the other party: (a) induce or entice (or attempt to induce or entice) to leave the employ of such other party, or (b) employ or engage to provide any services (whether as an independent contractor or otherwise) or recruit or solicit to do any of the foregoing.

**Section 15.2** Nothing contained in this Agreement shall be construed to create an employment relationship between JUICE employees and the Client.

## ARTICLE 16
## APPLICABLE LAW

**Section 16.1** Any and all claims, controversies or disputes arising out of, or in connection with this Agreement shall be resolved in accordance with this Section. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut, without regard to its conflicts of law provisions; Each of Client and JUICE consent to the exclusive jurisdiction of the federal courts (or if federal jurisdiction is not available, of the state courts) located in Connecticut for any legal action, suit or proceeding arising out of or in connection with this Agreement, and agree that any such action, suit, or proceeding may be brought only in such courts. The parties waive any right they might have to a trial by jury in any such suit, action, or proceeding.

## ARTICLE 17
## PORTFOLIO USE

**Section 17.1** JUICE may include the Client's name and samples of JUICE's deliverables in JUICE's portfolio of prior work, provided that JUICE maintains the confidentiality of Client Confidential Information. Either party may issue press releases regarding the existence or general non-confidential business terms of this Agreement and subsequent Statements of Work hereunder, subject to the other party's prior written approval, which approval shall not be unreasonably withheld or delayed.

## ARTICLE 18
## NOTICE

**Section 19.1**____All notices, including notices of an address change, required to be sent hereunder shall be in writing [or by email if and only if an acknowledgment of the email having been received is returned to the party sending the notice] and shall be deemed to have been given when mailed by first class mail, by nationally recognized overnight courier [or when emailed]: (i) for Client, **Uncommon Good, INC** at the above address, as well as copy emails to: carolyn@uncommongood.io and (ii) for JUICE, to the JUICE Account Manager and "JUICE Legal" at:

7

DiRusso Corporate Counsel, LLC
90 Southwood Drive
New Canaan, CT 06840
ead@dcc-law.com
203-594-7775

## ARTICLE 19
## MODIFICATION; SEVERABILITY

**Section 19.1** No waiver or change to this Agreement or any Statement of Work will be binding or effective unless in writing and signed by both JUICE and Client, except that a waiver may be signed only by the party against whom enforcement is sought. Suppose any provision (or portion thereof) shall be held unenforceable. In that case, the court shall modify or limit such provision so as to render it enforceable to the maximum extent permitted by law, and the remaining provisions of this Agreement and the remaining portions of any provisions held unenforceable in part shall continue in full force and effect.

## ARTICLE 20
## ORDER OF PRECEDENCE

**Section 20.1** Should the terms of this Agreement conflict with the terms of any Statement of Work, unless specifically stated otherwise in the Statement of Work, such inconsistency shall be resolved by giving the precedence in the order indicated as follows; (1) Any specific rider, addendum, or attachment to the Statement of Work (2) The Statement of Work (3) The terms and provisions of this Agreement.

## ARTICLE 21
## ASSIGNMENT

**Section 21.1** Client shall not assign or transfer this Agreement or the benefit of this Agreement (in whole or in part) to any person, including, without limitation, any subsidiary or affiliate of Client, without the prior written consent of JUICE.

## ARTICLE 22
## ENTIRE AGREEMENT

**Section 22.1** This Agreement, including all Statements of Work and other attachments, whether incorporated by reference or otherwise, constitutes the entire agreement and supersedes all other oral or written agreements, communications, and documents between the parties with respect to the subject matter hereof. This Agreement may be executed in multiple counterparts, all of the same Agreement that shall constitute one and the same instrument when taken together .

**[The balance of this page is intentionally left blank.]**

DocuSign Envelope ID: 187FDB08-FFBE-4492-AF51-179B9CA54D9B

9

**IN WITNESS WHEREOF**, JUICE and Client have executed this Agreement as of the date first above written.

| JUICE CREATIVE GROUP, LLC | UncommonGood |
|---|---|
| By: *Carter Grotta* | By: *carolyn driscoll* (DocuSigned by: 22A7E03761CF4B6) |
| Name: Carter Grotta | Name: carolyn driscoll |
| Title: Creative Director | Title: President |

10