# **EXHIBIT D**

# TRANSFER AGREEMENT

**THIS TRANSFER AGREEMENT** ("**Agreement**") is effective as of March 08, 2022 (the "**Effective Date**") and is entered into by and between Juice Creative Group, LLC, a Delaware limited liability company, having its corporate offices in Norwalk, CT 06850 ("**Juice**"), and UncommonGood, Inc., a Delaware corporation, with offices in Greenwich, CT 06830 ("**UG**").

**WHEREAS**, Juice was engaged by UG to assist in designing, developing and maintaining the UG website and the underlying code, software and other functionality therefor;

**WHEREAS**, in providing this assistance, Juice maintained possession and control of the foregoing elements and the passwords and other information necessary for access thereto;

**WHEREAS,** UG has informed Juice that it has engaged a new website development team to support its needs and has requested that Juice transfer all aspects of the UG website, underlying code, software and all other functionality and means to access and operate the UG website, along with all documentation associated therewith, to UG's full and exclusive control; and

**WHEREAS,** to facilitate said transfer, from January 19, 2022 to February 3, 2022, Juice provided UG with read only, or "view access," entry to all computer code and information in Juice's possession that is used to operate the UG website in its most up-to-date form, whether for live, public use, and/or for administrator use in a pre-live, testing or "sandbox" form, or administrator use for live form, including all features or elements, whether or not entirely or partly completed or in a pre-live "sandbox" form and whether or not accessible to the public, and twelve (12) hours of query replies (all together, the "**View Access**"), and, in December 2021, Juice provided UG with a User Manual regarding the same;

**WHEREAS,** the parties now desire to transfer from Juice to UG sole and irrevocable possession and control of all elements in Juice's possession related to operation and development of the UG website.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth in this Agreement, and for other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged by the parties, the parties agree as follows:

## I.
## TRANSFER DELIVERABLES

1.      The "**UG Website Technical Deliverables**" means:

(a) sole and irrevocable possession and control, with the exception of Section 1(c) below, of all existing computer and physical files, information and digital accounts required for and convenient to UG alone continuing to operate and develop the UG website and its underlying code, software and/or any other functionality for the UG website and UG's operation in its most up-to-date form, whether for live, public use, and/or for administrator use in a pre-live, testing or "sandbox" form, or administrator use for live form, including all features or elements, whether or

1

not entirely or partly completed or in a pre-live "sandbox" form and whether or not accessible to the public, and including (i) the UG codebase (i.e., the Bitbucket currently hosting the code or all the code therein in another operable form), (ii) any and all UG databases, (iii) login credentials to all of the servers and digital systems used for the UG website development or underlying code or software thereof (the "**UG Login Credentials**"), (iv) all items identified in Appendix I to the August 10, 2021 draft of the Statement of Work (attached as *Exhibit A* hereto), (v) all items identified in the UG Inventory and Mechanics of Transfer List (attached as *Exhibit B* hereto), and (vi) all other computer code and information otherwise revealed by Juice during the View Access period that is related to UG's website and/or operation, to the extent additional to the foregoing; and

(b) any and all intellectual property interests and rights in the items listed in Section 1(a) above previously or now existing or hereafter enacted, in force or coming into existence (in whatever form, media, or method of communication), including, without limitation, all rights of patent, trademark, trade secret and/or copyright throughout the world for the full term thereof, including all renewals; provided however

(c) UG Website Technical Deliverables (i) shall not include Juice's general, or non-UG specific, proprietary project management tools and methodologies that Juice may have used during its time working on the UG website and (ii) shall not be held in UG's sole possession and control with respect to programming or code objects or methods that have been used in developing or that are embodied in the UG Website Technical Deliverables that a) accelerate the pace of general application development or data conversion or b) is a component part of the UG website that, in its generic form, may have usefulness in other software programs or programming applications.

2.  The "**UG Website Content Deliverables**" means sole and irrevocable possession and control of the entirety of the textual, visual, aural and any other visible content or substance appearing on the website, as of the Effective Date of this Agreement, and through the URLs uncommongood.io; uncommongooddev.com; uncommongoodstaging.com; uncommongooddemo.com; and uncommongoodqa.com, to which Juice has access, that does not constitute and is not part of the UG Website Technical Deliverables.

## II.
## MECHANICS OF TRANSFER

Juice shall transfer in its entirety to UG all of the UG Website Technical Deliverables and the UG Website Content Deliverables over the course of four (4) business days, commencing on the first business day following the Effective Date of this Agreement (the "Transfer Period") and as detailed in the Inventory and Mechanics of Transfer List, attached as *Exhibit B* hereto:

1.  During the first three business days of the Transfer Period, and for not more than three non-consecutive hours each business day, and at no additional cost to UG, Juice shall make available to UG one or more Juice team members employed or contracted by Juice who have worked on or are familiar with UG's website or the underlying code, software and/or any other functionality for the UG website and UG's operation for the purpose of (i) answering questions and providing written support to UG with respect to UG accessing the UG Website Technical Deliverables and UG Website Content Deliverables and using the UG Login Credentials and (ii)

engaging in a video conference call from 3-4pm Eastern Time to discuss inquiries and troubleshoot any matters related to this Agreement. Juice shall answer all written UG inquiries within 12 business hours (defined for this purpose as between 9-5pm Eastern Time) for all responses sourced from Juice's team located in the United States and 21 business hours for all responses sourced from Juice's team members located internationally.

      2.      On the fourth day of the Transfer Period, at no additional cost to UG, Juice shall make available to UG one or more Juice team members employed or contracted by Juice who has worked on or are familiar with UG's website or underlying code, software and/or any other functionality for the UG website and UG's operation for the purpose of one video conference call of up to four hours, during normal business hours (defined for this purpose as between 9-5pm Eastern Time) to answer UG questions regarding the process of configuring and deploying the environment on LiquidWeb and any other environments configured by Juice in the new UG controlled environment and/or setting up any other server used in UG software. At UG's option, UG may request an additional video conference call of up to four hours on the same topics detailed above, which shall be held on this same day and conclude not later than 6pm Eastern Time, for a fee of five hundred dollars ($500) payable by UG to Juice pursuant to Section IV(3) below, regardless of whether or not UG uses the entire four hours of the second call.

      3.      For a period of thirty (30) days following the final day of the Transfer Period, for not more than a total of twenty (20) non-consecutive hours and not more than one and a half hours each day, and at no additional cost to UG, Juice shall make available to UG, as UG might request, one or more Juice team members employed or contracted by Juice who has worked on UG's website, underlying code, software and/or any other functionality for the UG website and UG's operation and have the necessary knowledge for the purpose of addressing additional UG inquiries concerning the UG Website Technical Deliverables, the UG Website Content Deliverables and the UG Login Credentials (the "Post-Transfer Consultation Period"). Juice shall answer all written UG inquiries during this period within 12 business hours (defined for this purpose as between 9-5pm Eastern Time) for all responses sourced from Juice's team located in the United States and 21 business hours for all responses sourced from Juice's team members located internationally.

### III.
### ASSIGNMENT OF INTELLECTUAL PROPERTY RIGHTS

      1.      For the avoidance of any doubt whatsoever, to the extent not already owned by UG, Juice hereby irrevocably transfers, conveys and assigns to UG any and all rights, titles and interests in and to (i) the UG Website Technical Deliverables and (ii) the UG Website Content Deliverables, and Juice does so free and clear of any and all actual, known or threatened liens, claims or other encumbrances and includes all rights to sue and to recover for any past infringements of any intellectual property rights in the UG Website Technical Deliverables and/or the UG Website Content Deliverables.

      2.      At Juice's expense, Juice agrees to execute all documents reasonably necessary to record the assignments and transfers contemplated by this Agreement, as applicable.

## IV.
## PAYMENT

1. UG shall remit to Juice a final payment in the amount of $23,462 (the "Payment") for any and all outstanding payments Juice claims to be due and owing by UG to Juice with respect to Juice's assistance with the UG Website Technical Deliverables and UG Website Content Deliverables, and Juice shall deem such payment full and final satisfaction of any and all outstanding payments owed to it by UG and acknowledges that no additional monies are owed by UG to Juice on any accounts whatsoever.

2. Immediately upon signing this Agreement, UG shall remit 50% of the Payment ($11,731) via a wire transfer, payable to Juice's bank of choice as provided by email to UG.

3. Upon 24 hours following the close of business on the last day of the Transfer Period, UG shall remit 25% of the Payment ($5,865) via wire transfer, payable to Juice's bank of choice as provided by email to UG; *provided however* that Juice has fully performed its obligations to that point under this Agreement. (Performance by Juice in respect of Exhibit B shall be deemed complete if Juice's only outstanding obligations arise from UG's failure to perform its necessary and direct antecedent obligations under Exhibit B). Furthermore, at this time, UG shall remit an additional five hundred ($500) to Juice if and only if UG elected in writing to engage in the option described by the last sentence of Section II(2) above.

4. Upon 24 hours following the close of business on the last day of the Post-Transfer Consultation Period, UG shall remit 25% of the Payment ($5,865) via wire transfer, payable to Juice's bank of choice as provided by email to UG; *provided however* that Juice has fully performed all of its obligations under Section II(2) this Agreement, to whatever extent required to be completed by that time.

## V.
## MUTUAL NON-DISPARAGEMENT

1. Neither party shall issue any communication or make any statement, written or otherwise (including but not limited to electronic, digital, and social media communications and postings) that disparages, criticizes or otherwise reflects adversely on the other party or any of its officers, directors, members or employees as such concerns work product implicated by this Agreement or its related costs, payments or non-payment of invoices, workmanship, organizational dynamics, and any individual UG or Juice team member associated therewith; *provided however* that such shall not at all limit statements made to a court or government official in a matter related to UG and/or Juice.

## VI.
## DISCLAIMERS AND LIMITATIONS OF LIABILITY

1. JUICE DOES NOT MAKE ANY, AND SPECIFICALLY DISCLAIMS ALL, EXPRESS OR IMPLIED WARRANTIES OR GUARANTEES REGARDING SERVICES PROVIDED BY JUICE TO UG OR THE CONDITION OF THE UG WEBSITE TECHNICAL

4

DELIVERABLES AND THE UG WEBSITE CONTENT DELIVERABLES AND PROVIDES SUCH TO UG "AS IS."

2. IN NO EVENT SHALL JUICE'S LIABILITY TO UG FOR DAMAGES RESULTING FROM ANY CLAIMS ARISING FROM OR RELATING TO THE UG WEBSITE TECHNICAL DELIVERABLES AND/OR THE UG WEBSITE CONTENT DELIVERABLES EXCEED THE TOTAL AMOUNT OF COMPENSATION RECEIVED BY JUICE UNDER THE PARTICULAR STATEMENT OF WORK TO WHICH SUCH CLAIMS OR DAMAGES RELATE.

3. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, EXCEPT AS EXPRESSLY SET FORTH HEREIN, NEITHER PARTY SHALL, UNDER ANY CIRCUMSTANCES, BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSSES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, LOSS OF DATA OR THE LIKE), WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN.

4. UG shall defend, indemnify and hold Juice harmless from and against any and all claims filed by third parties against Juice and losses resulting to Juice therefrom to the extent such is based upon, arising out of, attributable to or resulting from Juice's assistance to UG in the development, operation, or maintenance of UG's website, but excluding any liability claimed by any such third party to arise from any acts of fraud or intentional torts committed by Juice.

## VII.
## CONFIDENTIALITY

1. By virtue of the work undertaken by Juice for UG, each party may have access to confidential or proprietary information of the other party.

(a) "Confidential Information" shall include, without limitation, any Juice program licenses, UG's intellectual property, and all information that would otherwise reasonably be considered confidential, including but not limited to UG's and Juice's written reports, proposals, presentations, findings, conclusions, recommendations, or reporting data and analysis that may have been exchanged between the parties while working together on the UG Website Technical Deliverables, the UG Website Content Deliverables and other items being transferred pursuant to this Agreement.

(b) It is the express intent of this Section VII that neither party disclose to any third party any Confidential Information it has acquired in the performance or receipt of the forementioned deliverables.

(c) A party's Confidential Information shall not include information that (i) is or becomes a part of the public domain through no act or omission of the other party, or (ii) was in the other party's lawful possession prior to the disclosure and had not been obtained either directly or

indirectly from the disclosing party, or (iii) is lawfully disclosed to the other party by a third party without restriction on disclosure, or (iv) is independently developed by the other party and such can be evidenced.

(d) The parties shall not use each other's Confidential Information for any purpose other than for the work previously contracted for by the parties related to the UG Website Technical Deliverables and the UG Website Content Deliverables and this Agreement.

(e) Each party agrees to protect Confirmation Information obtained from the other party with the same degree of care that it uses to protect its own Confidential Information of a similar nature and value, but in no event less than a reasonable standard of care.

(f) Notwithstanding the foregoing, each party may disclose Confidential Information in accordance with a judicial or other governmental order, provided however that such party shall give the disclosing party written notice and reasonable opportunity to seek judicial intervention and/or confidential treatment of the information prior to such disclosure.

2. Each party shall retain its ownership of any intellectual property and proprietary information, techniques and tools that it had conceived, designed or developed prior to or independent of the UG Website Technical Deliverables and the UG Website Content Deliverables. The parties acknowledge and agree that during the course of working together, both parties and their respective employees and agents may have acquired or become acquainted with general business practices that are not Confidential Information and which the parties may freely use and otherwise employ in the furtherance of their respective business activities.

## VIII.
## MISCELLANEOUS

1. <u>Authority</u>. The parties represent and warrant that they each have full authority and the unrestricted right to enter into this Agreement.

2. <u>Successors</u>.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

3. <u>Parties' Conduct</u>. The parties agree that they shall use their best, earnest, cooperative and all reasonable efforts to expeditiously and effectively execute their respective obligations hereunder and without causing damage to the other party as a result of any dishonest, dilatory, unprofessional, defective or unreasonable work or conduct.

4. <u>Choice of Law and Venue</u>.  Any and all claims and disputes arising under or relating to this Agreement shall be resolved under the laws of the State of Connecticut, without regard to choice of law, and shall proceed in a court of competent jurisdiction in Connecticut.

5. <u>Severability</u>. In case any provision or wording in this Agreement shall be held invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

6.  <u>Integration Clause</u>. This Agreement represents the complete and entire understanding of the parties as of the Effective Date of this Agreement, whether written or oral, with regard to the subject matter of this Agreement and may be modified only by a writing signed by both parties.

7.  <u>Counterparts and Electronic Means</u>. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which will together constitute one and the same instrument. Delivery of this Agreement by electronic transmission capable of producing a printed copy bearing the party's signature shall be deemed execution and delivery hereof.

**IN WITNESS WHEREOF**, the parties knowingly and voluntarily execute this Agreement as of the date set forth below.

**JUICE CREATIVE GROUP, LLC**

By: *Carter Grotta*

Name/Title: Carter Grotta / Managing Partner

Date: 03/08/2022

**UNCOMMONGOOD, INC.**

By: *carolyn drisedl* (DocuSigned by: 22A7E03761CF4B6...)

Name/Title: President

Date: 3/8/2022