UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Juice Creative Group, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>UncommonGood, Inc.,<br><br>     Defendant.[1] | Civil No. 3:22-cv-01175-JCH<br><br><br>July 24, 2025 |

**ORDER RE: MOTION FOR AN ORDER TO COMPEL DISCOVERY**

  Plaintiff Juice Creative Group, LLC ("Juice") moves the Court to **(A)** compel Defendant UncommonGood, Inc. ("UG") to supplement its responses to Juice's written discovery requests, **(B)** compel UG's chief executive officer, Carolyn Driscoll, to resume her deposition from May 8, 2025 (the "Driscoll Deposition"), and **(C)** grant any other relief that the Court deems "just and proper."  ECF No. 254, at 1.

  UG urges the Court to deny Juice's Motion "in its entirety."  ECF No. 256, at 10.  I have carefully reviewed the record before the Court, including the Parties' memoranda of law, the nearly six-hour long recording of the Driscoll Deposition and its corresponding three-hundred-and-fifty-eight-page transcript, the Court's previous discovery orders in this case, and transcripts of the Court's previous hearings and discovery status conferences.  *See, e.g.,* ECF Nos. 68, 81, 102, 211, 229, 231, 251, 252, 253, 254, 255, 256, 257, 258.  Based on this voluminous record, I am not persuaded by UG's arguments.

---

[1] As discussed *infra*, Juice is also a Counterclaim-Defendant, and UG a Counterclaim-Plaintiff, as of October 28, 2024.  ECF No. 190.

1

For the reasons that follow, I **GRANT** in part and **DENY** in part the Motion for an Order to Compel Discovery.

**I.      Background**

Juice brought this case against UG on September 16, 2022, shortly after UG brought a related case against Juice in Connecticut Superior Court (the "State Action"). ECF No. 254-1, at 2; *see also UncommonGood, Inc. v. Juice Creative Grp., LLC*, No. FST CV 22-6058173-S (Conn. Super. Ct. Sept. 8, 2022).[2] UG eventually brought another related case in Connecticut Superior Court against its former counsel, Elizabeth DiRusso (the "DiRusso Action"). ECF No. 256, at 3; *see also UncommonGood, Inc. v. DiRusso Corp. Counsel, et al.*, FST-CV-23-6060595-S (Conn. Super. Ct. Mar. 31, 2023). The Parties have conducted "consolidated, concurrent discovery" in these cases. ECF No. 254-1, at 2-3; *see also* ECF No. 256, at 3. Because I assume their familiarity with the underlying facts, I will not restate them here except as necessary to explain my reasoning for granting in part and denying in part the instant Motion.

Discovery in this case closed on September 20, 2023. ECF No. 135. However, "due to this case's long and winding procedural history," UG did not file its counterclaims against Juice until more than a year later, on October 28, 2024 (the "Counterclaims"). ECF No. 231; *see also* ECF No. 190. Juice subsequently moved to modify the Scheduling Order "for the limited purpose of permitting [it] to conduct narrowly tailored discovery into facts and issues" underlying the Counterclaims, *see* ECF No. 198-1, at 1, including that UG suffered "damages in an amount not less than $7 million" because of Juice's alleged conduct, *see* ECF No. 190, at 23-30. Juice specified eight topics in its Motion to Modify the Scheduling Order on which it requested to obtain

---

[2] The Connecticut Superior Court eventually granted Juice's summary judgment motion in the State Action. *See UncommonGood, Inc. v. Juice Creative Grp., LLC*., No. FST CV 22-6058173-S, 2024 WL 1068963, (Conn. Super. Ct. Mar. 6, 2024).

additional discovery.[3] ECF No. 198-1, at 4. On March 21, 2025, I granted Juice's "requests" for such discovery from UG and Ms. Driscoll, "limited to the allegations underlying UG's counterclaims."[4] ECF No. 231. Consistent with my order, Juice propounded interrogatories and requests for production on UG on March 28, 2025, and deposed Ms. Driscoll on May 8, 2025. ECF No. 254-1, at 4-5.

At the request of the Parties, I held a discovery status conference *during* the Driscoll Deposition with UG's counsel, Spencer Dreier, UG's local counsel, Robert M. Fleischer, Juice's counsel, Emily B. Kirsch, and Ms. Driscoll (the "Conference"). ECF No. 251. Based on their representations, I clarified that the "scope" of the Driscoll Deposition "is the [C]ounterclaims, liability and damages." ECF No. 253, at 9, 11. I ordered Attorney Dreier to cease making "speaking objections" and limit any further objections to "two words maximum," and I reminded him that "attorneys who are defending depositions should [generally] say nothing" under the Federal Rules of Civil Procedure (the "Federal Rules"). *Id*. at 10-11, 15. I explained to Ms. Driscoll that "coaching during a deposition" or "during breaks" is not permitted under the Federal Rules, and that "all [she] ha[s] to do is tell the truth and answer [Juice's] questions." *Id*. at 12, 14.

---

[3] The eight topics are: (i) "UG's calculation of damages, including its revenues, expenses, profits, and losses from 2021 through present day;" (ii) "the history of fundraising, investment, and valuation of UG;" (iii) the "winding up" of UG; (iv) "the circumstances surrounding the retention of Attorney DiRusso and the alleged work that she performed for UG;" (v) "communications between UG and Attorney DiRusso . . . concerning the issue of intellectual property . . . and legal advice sought or obtained in connection therewith;" (vi) "communications with third-parties concerning UG's understanding of its ownership or non-ownership of the intellectual property created by Juice . . . and legal advice sought or obtained in connection therewith;" (vii) "confidential or proprietary information told to Attorney DiRusso by Ms. Driscoll that UG alleges may have been improperly disclosed to Juice;" and (viii) "documents and information received during discovery in the DiRusso Action." ECF No. 198-1, at 4.

[4] However, I did not grant Juice's request to depose UG's counsel, Spencer Dreier. ECF No. 231. Nor did I grant UG's request for additional discovery. *Id*. UG filed an objection to my order on April 4, 2025. ECF No. 241. It is currently pending before U.S. District Judge Janet C. Hall. ECF No. 242.

Furthermore, I advised "everybody" to "lower the temperature" of the Driscoll Deposition so that it could "be concluded" in a single day. *Id*. at 14. Contrary to my advice, the deposition did not conclude. ECF Nos. 254-1, at 9-10; 256, at 6-10.

After conferring with UG about resuming the Driscoll Deposition and supplementing its responses to Juice's written discovery requests—to no avail—Juice filed the instant Motion. ECF No. 254-1, at 5-6. It alleges that UG's responses to Requests for Production Nos. 3, 23, and 24, and Interrogatory No. 17 are insufficient. *Id*. at 7-9. It also alleges that Attorney Dreier "improperly coached" Ms. Driscoll and engaged in "minutes-long speaking objections" throughout the Driscoll Deposition, even after I ordered him not to do so. *Id*. at 10. Accordingly, Juice moves the Court to compel UG to supplement its responses, compel Ms. Driscoll to resume her deposition, and grant any other "just and proper" relief. ECF No. 254, at 1.

UG opposes the Motion "in its entirety." ECF No. 256, at 10. It argues that its responses to Juice's requests for production and interrogatories are sufficient. *Id*. at 1-5. It also argues that Attorney Kirsch frustrated the Driscoll Deposition by "refusing to limit her questioning" to the "eight topics" specified in the Motion to Modify the Scheduling Order and ultimately "walk[ing] out" of the deposition room before she had concluded her questioning. *Id*. at 6-10.

## II.     Legal Standard

Under Rule 26 of the Federal Rules, a party may generally obtain discovery into any non-privileged matter that is relevant to any other party's claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Such discovery may be obtained through interrogatories, requests for production, and depositions. *See, e.g*., Fed. R. Civ. P. 30, 33, 34. The "purpose" of the Federal Rules as they relate to discovery is to "inform [a party] of what theories [an opposing] party proposes to develop at trial, and on what basis a jury will be asked to award damages." *In re PE Corp. Sec. Litig*., 221 F.R.D. 20, 23

4

(D. Conn. 2003) (internal citation and quotation marks omitted). Accordingly, courts consider discovery to be "relevant" under Rule 26 if it has "any tendency" to make a fact that is "of consequence" in determining the outcome of a case "more or less probable than it would be" without it. *Estuary Transit Dist., et al., v. Hartford Healthcare Corp., et al.*, No. 3:24-CV-01051 (SFR), 2025 WL 1678417, at *3 (D. Conn. Jun. 13, 2025) (citing Fed. R. Evid. 401).

When a party fails to "answer an interrogatory" under Rule 33, "produce documents" under Rule 34, or "answer a question" during a deposition under Rule 30, "any other party" may move the Court for "an order compelling an answer, designation, production or inspection" under Rule 37. Fed. R. Civ. P. 37(a)(3)(B)(i)-(iv). Such party can also move the Court for other "just orders," including sanctions. Fed. R. Civ. P. 37(b)(2)(A); Fed R. Civ. P. 37(b)(2)(C); (authorizing courts to "order the disobedient party" or "the attorney advising that party" to pay "reasonable expenses [and] attorney's fees"); *see also* Fed. R. Civ. P. 30(d)(2) (authorizing courts to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of [a] deponent"). "Because the Federal Rules . . . are to be construed liberally in favor of discovery . . . the party resisting discovery bears the burden of showing why" a discovery motion "should be denied." *In re Aggrenox Antitrust Litig.,* No. 3:14-CV-00572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (internal citations and quotation marks omitted). Ultimately, "all 'motions relative to discovery . . . are addressed to the discretion of the . . . [C]ourt.'" *Mercer v. Rovella*, No. 3:16-CV-329 (CSH), 2022 WL 1514918, at *3 (D. Conn. May 12, 2022) (citing *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981)); *see also Kyros L. P.C. v. World Wrestling Ent., Inc.,* 78 F.4th 532, 545 (2d Cir. 2023) (recognizing that "just as [the Court] has broad discretion to manage discovery, it likewise has wide discretion to impose sanctions for abusing that process").

5

### III. Discussion

#### A. The Written Discovery Requests

Juice moves the Court to compel UG to supplement its responses to Request for Production Nos. 3, 23, and 24, and Interrogatory No. 17. ECF Nos. 254, at 1; 254-1, at 7-9.

##### i. Request for Production No. 3

Request for Production No. 3 seeks "all documents, communications, and records concerning investors, potential investors, lenders, and potential lenders in UG." ECF No. 254-1, at 3. However, Juice propounded this Request for Production in December 2022, nearly two years before UG filed the Counterclaims. *Id*. Because discovery in this case is closed except for Juice's "discovery into facts and issues that UG alleges as part of its [C]ounterclaims," I deny the instant Motion with respect to Request for Production No. 3. ECF No. 231 (internal citation and quotation marks omitted).[5]

##### ii. Request for Production Nos. 23 and 24

Request for Production Nos. 23 and 24 seek "all documents and communications reflecting, concerning, or relating to the history of fundraising, investment, and valuation of UG," and "all documents and communications reflecting, concerning, or relating to UG's winding up its business or ceasing operations." ECF No. 254-4, at 9. UG represents that it "did not [generally] engage with its investors, in writing," about such matters, and that it "has [already] produced all [responsive] documents that it has found." ECF No. 256, at 3-4. Juice finds this representation difficult to believe. ECF No. 254-1, at 6-8.

---

[5] Additionally, I find that Request for Production No. 3 is duplicative of Request for Production Nos. 23 and 24. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring the Court "on a motion or on its own" to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . .").

6

Given UG's allegation that it suffered "damages in an amount not less than $7 million" because Juice's alleged conduct hindered its ability to fundraise, I find that the materials sought by Request for Production Nos. 23 and 24 are relevant to the Counterclaims under Rule 26. ECF No. 190, at 23-30; *see also* Dep. Tr. at 135, 138, 185. I therefore order UG to **(1)** conduct a thorough search for any responsive materials, **(2)** produce all such non-privileged materials and a privilege log identifying any responsive materials withheld as privileged, if any, and **(3)** certify to Juice, in writing and under penalty of perjury, that it has no other responsive materials within its possession or control. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

### iii. Interrogatory No. 17

Interrogatory No. 17 asks UG to "identify all lenders, potential lenders, investors, or potential investors in UG and detail the dates and amounts of their investments in UG and, for those that declined to lend or invest . . . identify the reason." ECF No. 254-5, at 11. In response, UG produced a "cap table" consisting of the names of its "principal investors" and details about their investments. ECF No. 256, at 1, 5. However, UG "redacted" the names of its "minority investors." *Id*. at 1. Although UG opposes disclosing their names to Juice, it represents that the Connecticut Superior Court has ordered it to do so "by June 15, [2025]," in connection with the DiRusso Action. *Id*. at 3.

Given UG's allegation that it suffered "damages in an amount not less than $7 million" because Juice's alleged conduct hindered its ability to fundraise, I find that the information sought by Interrogatory No. 17 is relevant to the Counterclaims under Rule 26. ECF No. 190, at 23-30; *see also* Driscoll Dep. 135, 138, 185. I therefore order UG to disclose **(1)** the identities of all its investors and lenders, **(2)** the identities of any potential investors and lenders with whom UG interacted at the time that Juice allegedly hindered its ability to fundraise, and **(3)** the reasons given

by such actual and potential investors and lenders for declining to invest in, or lend to, UG. Additionally, I order UG to **(4)** produce un-redacted versions of any documents that it previously produced where such information was redacted. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii).

### B. The Driscoll Deposition

Juice moves the Court to compel Ms. Driscoll to resume her deposition from May 8, 2025. ECF Nos. 254, at 1; 254-1, at 9-10.

Under Rule 30, the Court "must allow additional time" for a deposition "if it is needed to fairly examine a deponent, or if the deponent, another person, or any other circumstance impedes or delays" such deposition. Fed. R. Civ. P. 30(d)(1). Juice argues that it needs additional time to fairly examine Ms. Driscoll because Attorney Dreier's behavior during her deposition made doing so "impossible." ECF No. 254-1, at 10. Based on the record before the Court, I agree with Juice.

#### i. Attorney Dreier

By my count, Attorney Dreier objected or otherwise interjected during the Driscoll Deposition more than two-hundred times. *See, e.g.,* Dep. Tr. at 6-8, 14-15, 18, 28, 33-36, 38, 40, 43-44, 48-49, 50-51, 64-66, 72-74, 84, 86-87, 89, 91-102, 104-105, 109-111, 118-120, 125-126, 132-134, 140, 142, 149, 151, 155-162, 166-167, 169-178, 184-187, 190-192, 195, 198-199, 200-204, 208, 210-215, 217, 220-222, 224, 228-229, 231-236, 246, 248-254, 263, 265-267, 272-278, 280, 282-294, 297, 299-302, 305, 308-309, 311, 317, 320, 322-324, 328-332, 336-338, 341-344. His objections "frequently mushroomed into improper speaking objections where [he] elaborated on [his] reasons for objecting rather than simply stating [his] objections concisely," as is required by Rule 30. *Phillips v. Manufacturers Hanover Tr. Co.*, No. 92 CIV. 8527 (KTD), 1994 WL 116078, at *3 (S.D.N.Y. Mar. 29, 1994). Attorney Dreier continued doing so even after I ordered him, at the Conference, to limit his objections to "two words maximum." ECF No. 253, at 10-11.

8

His improper speaking objections often affected "the substance" of Ms. Driscoll's answers "to the extent that she was relying" on them as "cues." *Ryan v. Paychex, Inc.*, No. CIV 308CV1151 WWE, 2009 WL 2883053, at *1 (D. Conn. Sept. 1, 2009) (ordering deponent to "appear for a continued deposition" for this reason); *see also Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 305 (S.D.N.Y. 2019) (finding that non-deposing counsel impeded a deposition by "repeatedly ma[king] speaking objections").

Among the most unprofessional and inappropriate of Attorney Dreier's interjections at the Driscoll Deposition were those about Attorney Kirsch's face and voice. *See, e.g.*, Dep. Tr. at 107, 118-119, 121, 123, 187, 198-199, 202-203, 209, 229, 252, 274-275, 308-309, 312, 336, 338-339, 344. By my count, he offered no fewer than twenty-five such interjections. *Id.* He even directed Juice's videographer to record Attorney Kirsch. *See* Dep. Tr. at 119. The videographer refused to do so. *Id.* UG argues that Attorney Kirsch was manipulating her face and voice to "intimidate[]" and "ma[k]e" Ms. Driscoll "fearful" of her. ECF No. 253, at 4; *see also* ECF No. 256, at 9. However, Ms. Driscoll did not appear to be afraid, intimidated, or otherwise inhibited by Attorney Kirsch during her deposition.[6] Indeed, the recording and transcript appear to show Ms. Driscoll refusing to answer Attorney Kirsch's questions, rolling her eyes at Attorney Kirsch, shaking her head at Attorney Kirsch, shouting at Attorney Kirsch, cursing at Attorney Kirsch, and even raising, waiving, and banging (onto what appears to be a table) her hands in response to Attorney Kirsch's

---

[6] At certain points during her deposition, Ms. Driscoll did appear to be upset. *See, e.g.,* Dep. Tr. at 40, 63, 99, 104-105, 123, 142, 160, 188-189, 281, 292, 309-310. However, she represented at the Conference that this was due to her "anxiety," because not "everyone" at the deposition spoke "calmly," and because "the whole energy [of the deposition] is just so elevated." ECF No. 253, at 12-13.

9

questioning.[7] *See, e.g.,* Dep. Tr. at 103-104, 110-115, 219-225, 240, 268-270, 324-325, 339-340; *see also Paychex, Inc.*, 2009 WL 2883053, at *1 n. 2 (ordering a deponent to resume her deposition because of her "outright refusal" to answer certain questions) *Sicurelli v. Jeneric/Pentron, Inc.,* No. 03-CV-4943, 2005 WL 3591701, at *8-*9 (E.D.N.Y. Dec. 30, 2005) (finding that non-deposing counsel impeded a deposition by making similarly "unprofessional and inappropriate" remarks about deposing counsel).

Attorney Dreier improperly insisted that Attorney Kirsch identify to which of the eight topics in Juice's Motion to Modify the Scheduling Order her questions pertained—by my count, no fewer than twenty-five times. *See, e.g.*, Dep. Tr. at 6-8, 14-15, 35, 52-53, 56-58, 61-66, 69-70, 246-247, 265-269, 272-275, 282-294, 301-302. When Attorney Kirsch refused, he improperly instructed Ms. Driscoll not to answer such questions for exceeding the scope of the deposition— by my count, no fewer than nine times. *Id.* at 45, 65, 68-69, 134-135, 246-247, 282-291, 294; *see also Learning Int'l, Inc. v. Competence Assur. Sys. Inc.*, No. 90 CIV. 2032 (MBM), 1990 WL 204163, at *3 (S.D.N.Y. Dec. 13, 1990), *on reargument*, No. 90 CIV. 2032 (MBM), 1991 WL 33342 (S.D.N.Y. Mar. 4, 1991) (finding that non-deposing counsel is "not free simply to pepper [a deposition] with interruptions and directions not to answer" questions that he "regard[s] as forays into matters that were not to be the subject of the deposition"). He continued to do so even after I clarified, at the Conference, that the "scope" of the Driscoll Deposition is "the [C]ounterclaims, liability and damages," in general, not the eight topics, in particular. ECF No. 253, at 9, 11. Ms. Driscoll often followed Attorney Dreier's improper instructions not to answer. *See Fashion Exch. LLC,* 333 F.R.D. at 305 (finding that non-deposing counsel impeded a deposition by "engaging in

---

[7] Although, as discussed *infra*, some of Attorney Kirsch's conduct toward Attorney Dreier was unnecessarily confrontational, her conduct towards Ms. Driscoll was generally respectful and professional. *See, e.g.*, Dep. Tr. at 247-248, 281, 285, 305.

debates" about deposing counsel's questions); *Sicurelli,* 2005 WL 3591701, at *8-*9 (finding that non-deposing counsel impeded a deposition by giving "instructions not to answer . . . grounded in his mistaken belief that certain questions were not within the scope of the Court's orders").

Additionally, Attorney Dreier walked Ms. Driscoll out of the deposition room, without Attorney Kirsch agreeing to go off the record and take a break, five times. *See* Dep. Tr. at 78-79, 108, 116, 123, 313-314; *see also Sicurelli,* 2005 WL 3591701, at *7, *9 (finding that the deponent's "walking out of the deposition room surely impeded the progress of the deposition").

As a result of these improper objections, instructions, and interjections, Attorney Dreier appears in approximately sixty-five percent of the transcript of the Driscoll Deposition, even though "attorneys who are defending depositions should [generally] say nothing" under the Federal Rules. ECF No. 253, at 15; *see also Sicurelli,* 2005 WL 3591701, at *4, *9 (finding that non-deposing counsel impeded a deposition when he appeared on approximately sixty-seven percent of the deposition transcript). I have carefully reviewed the record before the Court for any justification for such behavior and found none.[8] Accordingly, I find that Attorney Dreier "impede[d]" Juice from "fairly examining" Ms. Driscoll during her deposition on May 8, 2025, and I order Ms. Driscoll to resume her deposition on August 27, 2025. Fed R. Civ. P. 30(d)(1); *see also Juice Creative Grp., LLC v. UncommonGood, Inc.*, No. 3:22-CV-01175 (JCH), 2023 WL 8368232, at *6 (D. Conn. Dec. 3, 2023) (granting Juice's request to "reopen" a 2023 deposition of

---

[8] UG suggests that Attorney Dreier behaved no differently at the Driscoll Deposition than did Attorney Kirsch at UG's deposition of Juice under Fed. R. Civ. P. 30(b)(6). *See, e.g.,* ECF No. 256, at 8-10, n. 7, n. 8. Regardless of whether that is true, "[d]iscovery is not equity: one party's noncompliance" with the Court's orders or the Federal Rules as they relate to discovery "does not excuse the other's failure to comply." *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 272 (S.D.N.Y. 2015) (internal citations and quotations omitted).

11

Ms. Driscoll "for the limited purpose of compelling answers to the specific questions [that she did not answer] at the [improper] instruction of Attorney Dreier").

### ii. Attorney Kirsch

UG urges the Court to focus, instead, on Attorney Kirsch's conduct during the Driscoll Deposition. ECF No. 256, at 6-10. I agree with UG that some of Attorney Kirsch's questions were arguably irrelevant to the Counterclaims and therefore objectionable (albeit many of the questions to which UG cites as examples in its memorandum of law were just-as-arguably foundational). *Id.* at 7. However, when that is the case, non-deposing counsel "should . . . merely note[] any objection, rather than instructing [the deponent] not to answer" or making speaking objections. *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, 331 F.R.D. 75, 79 (S.D.N.Y. 2019). Attorney Dreier is well aware of this. *See Juice Creative Grp., LLC v. UncommonGood, Inc.*, 2023 WL 8368232, at *5-*6 (finding that Attorney Dreier had "no basis" under Rule 30 "to instruct [Ms.] Driscoll . . . not to answer questions" during her 2023 deposition and explaining why the "Court [generally] disfavors [such] instructions").

I also agree with UG that some of Attorney Kirsch's conduct towards Attorney Dreier, particularly after she suspended the deposition by "walking out" but before the videographer ceased recording, was unnecessarily confrontational. ECF No. 256, at 9-10. However, context matters. The recording appears to show an understandably exasperated Attorney Kirsch confronting Attorney Dreier at the *end* of a nearly six-hour long deposition, during which he repeatedly subjected her to abusive applications of Rule 30. *See* Fed. R. Civ. P. 30(c)(2) (permitting objections, but only if "stated concisely in a nonargumentative and nonsuggestive manner," and permitting instructions not to answer, but "only" under limited circumstances).

12

Accordingly, I am not persuaded by UG's argument that Juice "had every opportunity to complete this deposition" on May 8, 2025, "but chose not to do so." ECF No. 256, at 10.

### C. Other Appropriate Relief

Juice moves the Court for any other relief that it deems "just and proper" under the Federal Rules. ECF No. 254, at 1.

Under Rule 30, such relief may include sanctions against any "person" who "impedes, delays, or frustrates the fair examination of [a] deponent." Fed. R. Civ. P. 30(d)(2). Monetary sanctions against non-deposing counsel are especially warranted under Rule 30 "where [such] counsel's interruptions included repeated improper instructions for the witness not to answer," or otherwise "prevent[ed] the deposing party from completing the deposition." *Cordero v. City of New York*, No. 15-CV-3436 (JBW) (CLP), 2017 WL 2116699, at *5 (E.D.N.Y. May 12, 2017) (citing *Morales v. Zondo Inc.*, 204 F.R.D. 50, 53-54 (S.D.N.Y. 2001)). As discussed *supra*, such is the case here. I therefore order Attorney Dreier to personally pay half of Juice's reasonable expenses and attorney's fees for the initial deposition, and all of Juice's reasonable expenses and attorney's fees for the continued deposition, of Ms. Driscoll. *See* Fed. R. Civ. P. 30(d)(2) (providing that "appropriate" sanctions for violating Rule 30 include paying the "reasonable expenses and attorney's fees incurred by any party"); *see also Learning Int'l, Inc.*, 1990 WL 204163, at *3 (ordering non-deposing counsel to personally pay the "costs and fees" of a deposition); *Sicurelli*, 2005 WL 3591701, at *9 (ordering non-deposing counsel to personally pay the "costs" of re-deposing deponents).

The Court has repeatedly warned Attorney Dreier against making "long-winded . . . speeches" and engaging in other "unacceptable" and even "grievable" behavior in this case. ECF No. 229, at 20-21, 46; *see e.g.*, ECF No. 81, at 5, 22 (directing Attorney Dreier not to use

13

inflammatory "adjectives" or "interrupt" Attorney Kirsch); ECF No. 102, at 42 (noting that Attorney Dreier has been "quite disrespectful to the Court" and that "the temperature in this case needs to come down"); *Juice Creative Grp., LLC v. UncommonGood, Inc.*, 2023 WL 8368232, at *5-*6 (explaining to Attorney Dreier why the "Court [generally] disfavors instructions to [deponents] not to answer"). I find it troubling that neither the Court's warnings, nor my orders at the Conference, deterred him from impeding the Driscoll Deposition. *See Learning Int'l, Inc.*, 1990 WL 204163, at *3 (recognizing that "in all proceedings," including depositions, "there is a duty imposed upon counsel to deal fairly and sincerely with the [C]ourt and opposing counsel so as to conserve the time and expense of all, and [so] that actions may be litigated in an orderly manner") (internal citation and quotation marks omitted). Defendant and Defendant's counsel are placed on notice that further violations of the Court's orders or the Federal Rules may lead to harsher sanctions against them, as applicable. *See, e.g.,* 28 U.S.C. § 1927; Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); Fed. R. Civ. P. 27(b)(2)(C).

### IV. Conclusion

For these reasons, I **GRANT** in part and **DENY** in part the instant Motion, and I **ORDER** the Parties, their counsel, and Ms. Driscoll to do as follows:

UG shall supplement its responses to Request for Production Nos. 23 and 24 and Interrogatory No. 17 by **August 8, 2025**. With respect to Request for Production Nos. 23 and 24, UG shall also certify, in writing and under penalty of perjury, that it has no responsive documents or communications in its possession or control other than what it has produced or identified in a privilege log.

The Driscoll Deposition shall resume, in person, on **August 27, 2025, at 10:00 a.m.**, in Courtroom Four, 141 Church Street, New Haven, Connecticut. I will preside and rule on any

objections as they arise. Attorney Dreier shall limit any such objections to "two words maximum." ECF No. 253, at 10. Attorney Kirsch shall be permitted **no more than three hours** to ask Ms. Driscoll her remaining questions. She may also ask any previous questions which she believes Ms. Driscoll did not sufficiently answer because of Attorney Dreier's behavior on May 8, 2025, **as long as** she simultaneously restates Ms. Driscoll's previous answers so that Ms. Driscoll may determine for herself whether they are in need of supplementation. Pursuant to my previous order, UG's local counsel, Attorney Fleischer, shall also attend. ECF No. 79.

After the Driscoll Deposition has concluded, Juice shall provide Attorney Dreier with an invoice reflecting half of its reasonable expenses and attorney's fees for the initial deposition, and all of its reasonable expenses and attorney's fees for the continued deposition, of Ms. Driscoll. Attorney Dreier shall **personally** pay the invoice **within four weeks** of receiving it. He shall inform the Court when he has done so by filing a notice on the docket.

Should the Parties or their counsel have questions about my orders, they may file a motion for clarification on the docket.

This is not a recommended ruling. This is a "determination" of a "nondispositive" motion "relating to discovery." D. Conn. L. Civ. R. 72.1(C)(2). As such, it is reviewable pursuant to the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified by a U.S. District Judge in response to a timely objection. *See* D. Conn. L. Civ. R. 72.2(a).

SO ORDERED.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge