UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUICE CREATIVE GROUP, LLC, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:22-cv-01175-JCH |
| | : | |
| v. | : | |
| | : | |
| UNCOMMON GOOD, INC., | : | DECEMBER 10, 2025 |
| Defendant. | : | |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 309)**

**I.     INTRODUCTION**

Juice Creative Group, LLC ("Juice") brings this action against Uncommon Good, Inc., ("UG"), alleging copyright infringement under 17 U.S.C. § 101, et seq., fraud in the inducement, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and entitlement to a declaratory judgment that Juice has not breached its contractual obligations.  See Am. Compl. (Doc. No. 174).[1]  With the exception of Juice's claim for the breach of the implied covenant of good faith and fair dealing, all other of Juice's claims remain pending following summary judgment.  See generally Ruling on Plaintiff's Motion for Summary Judgment ("SJ Ruling") (Doc. No. 275).

Before the court is Juice's Motion to Dismiss the Amended Complaint without prejudice.  See Motion to Dismiss the Amended Complaint ("Motion") (Doc. No. 309). UG opposes the Motion.  See Memorandum in Opposition ("Opposition") (Doc. No. 310).  Juice replied.  See Reply (Doc. No. 326).

---

[1] The court granted summary judgment in favor of UG as to Count Four in the Amended Complaint, Juice's claim for breach of the implied covenant of good faith and fair dealing.  See Ruling on Plaintiff's Motion for Summary Judgment at 29-31 (Doc. No. 275).

1

## II.  BACKGROUND

The court assumes general familiarity with the merits of the underlying litigation. See SJ Ruling at 2-8.  The court will, instead, focus on the protracted procedural history of this case which involved federal and state court and involves an inordinate amount of pre-trial litigation for a dispute on copyright infringement.  On September 8, 2022, following the breakdown in the relationship between Juice and UG, and following an agreement to resolve the parties' differences, UG sued Juice in Connecticut Superior court alleging five causes of action:  breach, fraud, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  See, generally, Uncommongood, Inc. v. Juice Creative Grp., LLC., No. FST CV 22-6058173 S, 2024 WL 1068963 (Conn. Super. Ct. Mar. 6, 2024).  Eight days later, on September 16, 2022, Juice brought suit against UG in this court, alleging copyright infringement, fraud in the inducement, breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, quantum meruit, and entitlement to declaratory judgment.  See Compl. (Doc. No. 1).

In the four years following the initiation of the the state and federal actions, the parties have vigorously litigated their claims and counterclaims across multiple dispositive motions; engaged in extensive (and too-frequently hotly contested and unduly disrespectful) discovery; undertook multiple failed settlement negotiations; and briefed multiple substantive and procedural issues, including counsel disqualification, prejudgment remedies, and contract rescission.  Following a Calendar Call on October 3, 2025, the parties appeared ready for trial.  See Minute Entry (Doc. No. 294).

On November 4, 2025 Juice moved to voluntarily dismiss the action without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. For the reasons below, the court dismisses the action without prejudice.

## III.     LEGAL STANDARD

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, "[e]xcept as provided in Rule 41(a)(1) [which concerns voluntary dismissals made before a responsive pleading is filed or on consent], an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." See also, Paysys Int'l, Inc. v. Atos IT Servs. Ltd., 901 F.3d 105, 108 (2d Cir. 2018). The presumption in the Second Circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2). Paulino v. Taylor, 320 F.R.D. 107, 109 (S.D.N.Y. 2017). However, voluntary dismissal without prejudice is not a matter of right. Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990). The core of the analysis of whether a voluntary dismissal without prejudice is proper is whether the defendant will not be prejudiced by the dismissal. D'Alto v. Dahon California, Inc., 100 F.3d 281, 283 (2d Cir. 1996).

In Zagano, the Second Circuit laid out factors a district court should consider when determining whether a dismissal will prejudice the defendant: (1) the plaintiff's diligence in bringing the motion; (2) undue vexatiousness by the plaintiff; (3) the extent to which the suit has progressed (including the defendant's efforts and expenses in preparing for trial); (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. 900 F.2d at 14. The prospect of a second litigation, without more, is not prejudice to the defendant. D'Alto, 100 F.3d at 283.

**IV.    DISCUSSION**

UG has not demonstrated prejudice sufficient to bar Juice's motion for voluntary dismissal of this action.  On balance, the Zagano factors weigh in Juice's favor.

   A.  First Zagano Factor: Juice's Diligence

With respect to the first Zagano factor, Juice has acted with requisite diligence in bringing its Motion, given the circumstances of the case.  Whether a plaintiff was diligent in bringing its motion to dismiss turns on whether a plaintiff moved to dismiss the complaint within a reasonable time after the occurrence of the event that resulted in the plaintiff's decision not to pursue the action.  Stinson v. City Univ. of New York, 2020 WL 2133368, at *2 (S.D.N.Y. May 4, 2020).  At baseline, a defendant "must show that it expended resources or otherwise detrimentally relied on a reasonable expectation that the plaintiff would pursue its remaining claims."  Id.

Here, the benchmark event was when Juice learned UG was judgment proof. Juice argues that the instant Motion came promptly after Juice learned that UG had rendered itself judgment proof.  Motion at 7.  Juice states that, prior to learning UG was judgment proof, Juice had "always intended to pursue its claims."  Id.  It certainly vigorously litigated the case, reflecting that intent.  In opposition, UG contends that Juice has been aware that UG was judgment proof since at least October 2024, given that UG ceased business operations in early 2024.  Opposition at 10.

While it is true that UG ceased business operations in early 2024, see Defendant's Answers and Counterclaims at 20, ¶ 1 (Doc. No. 190) (October 28, 2024),

4

that reveals little of the full story.[2]  Throughout discovery, Juice sought information regarding UG's financial wellbeing. UG vigorously resisted those attempts, sometimes in direct contravention of court order.

For example, on April 4, 2023, Juice filed a Motion to Compel Discovery Responses across a series of discovery obligations that included, inter alia, information related to UG's finances.  See Motion to Compel Discovery (Doc. No. 51).  UG opposed the Motion to Compel in a 19-page Opposition that stated, in relevant part, that discovery about UG's investors and clients and UG's financials was "completely irrelevant and unduly prejudicial."  See Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery at 13-15, 16-18 (Doc. No. 60).  Thereafter, Magistrate Judge Maria E. Garcia ordered UG to produce, among other things, discovery related to investors, financial statements, financial projections, profit and loss statements, and revenue sheets. See generally Order (Doc. No. 79).  On May 17, 2023, UG objected to the Order in a 37-page brief asserting that "it was clearly erroneous and contrary to law for Magistrate Judge Garcia to compel the production," of discovery related to its financials and investors.  See Objections to Magistrate Judge Garcia's Order Compelling Discovery at 13-18 (Doc. No. 87).  This court affirmed Judge Garcia's Order on June 9, 2023.  See Minute Entry for Hearing re: Objections (Doc. No. 109).  Juice and UG continued to quarrel over whether UG had met its discovery obligations pursuant to Judge Garcia's Order, as well as other subsequent discovery.  See generally Exhibit C to Affidavit of Emily B. Kirsch ("Emails re: Deficiencies.") (Doc. No.

---

[2] Indeed, Juice became aware of an investment of over $1 million that UG received in March 2024 (with no operating business to spend it on), see Reply at 6, directly contradicting the notion that Juice should have known UG was judgment proof earlier than Ms. Driscoll's deposition.

114). Indeed, two years later on June 10, 2025, UG continued to resist discovery related to its investors and lenders. See Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel at 3-5 (Doc. No. 256). To imply that Juice knew UG was judgment proof by October 2024 simply because UG had ceased operations belies years of attempts by UG to obfuscate the accurate picture of its financial condition.

The court is persuaded that Juice could only confirm its inability to collect on a possible judgment from UG through the deposition of UG Founder and CEO Carolyn Driscoll in September 2025.[3] In that deposition, Ms. Driscoll testified that UG held less

---

[3] The court is also cognizant that the delay of Ms. Driscoll's deposition was also of UG's doing, specifically as a result of now-sanctioned conduct by Attorney Spencer Dreier. Juice commenced the instant action on September 16, 2022. See Doc. No. 1. It was not until two years later, on October 28, 2024, that UG filed its counterclaims, following dismissal of their action in Connecticut Superior Court. See Doc. No. 190. (These counterclaims were dismissed by this court on August 25, 2025). As a result, Juice moved to modify the Scheduling Order "for the limited purpose of permitting [it] to conduct narrowly tailored discovery into facts and issues," see Doc. No. 198-1 at 1, related to the allegations underlying the counterclaims. Juice specifically sought, inter alia, written discovery and deposition testimony from Ms. Driscoll. Id. at 4. Judge Garcia granted Juice's request for discovery of Ms. Driscoll. See Order (Doc. No. 231).

Ms. Driscoll's deposition was initially scheduled for May 8, 2025, pursuant to Judge Garcia's Order. However, due to Attorney Dreier's minutes-long objections and otherwise abusive conduct, Judge Garcia held a status conference during the deposition where Judge Garcia ordered Attorney Dreier to limit further objections to "two words maximum" and reminded Attorney Dreier that "coaching during a deposition" is not permitted under the Federal Rules of Civil Procedure. See Discovery Conference Hearing Transcript (Doc. No. 253). Juice ended the deposition, leaving it open to resume at a later date. UG thereafter refused to produce Ms. Driscoll to complete her deposition, prompting Juice to file a Motion to Compel on May 23, 2025. See Motion to Compel (Doc. No. 254). As has seemingly been UG's operating procedure throughout the history of this litigation, UG vigorously resisted Juice's Motion to Compel. See Opposition (Doc. No. 256).

Judge Garcia thereafter ordered that Ms. Driscoll's deposition resume on August 27, 2025. See Order (Doc. Nos. 259, 260). In Judge Garcia's Ruling, Judge Garcia found that Attorney Dreier objected or otherwise interjected over two-hundred times. See generally, id. UG then moved to continue the deposition of Ms. Driscoll, see Motion to Continue (Doc. No. 272), which Judge Garcia granted, rescheduling Ms. Driscoll's deposition to September 10, 2025. See Order (Doc. No. 274). Judge Garcia determined that monetary sanctions were appropriate due to Attorney Dreier's misconduct at Ms. Driscoll's deposition. See Doc. No. 259. Judge Garcia ordered Attorney Dreier to personally pay half of Juice's reasonable expenses and attorney's fees for the first session of Ms. Driscoll's deposition and all of Juice's reasonable expenses and attorney's fees for the continued deposition that took place on September 10, 2025. Id.

than $200,000 in its counsel's IOLTA account, which would be largely depleted in preparing for trial, and an additional $4,000 in checking.  Motion at 3.  That Juice did not learn this sooner is the result of delays that UG caused.  Therefore, the first Zagano factor weighs in Juice's favor.

### B. Second Zagano Factor: Vexatiousness

The second factor, vexatiousness, turns on whether Juice "brought an action to harass the defendant or if the plaintiff has ill-motive." Stinson, 2020 WL 2133368, at *3. There is nothing in the record that indicates that Juice, which has spent years litigating this action, and to defend itself in state court from UG's action, did so to harass UG or that it did not intend to advance meritorious claims against UG.[4]  It might surprise a reader, having heard UG's argument, to learn, in fact, that Juice brought this action only after UG sued Juice in state court—an action that the Connecticut Superior Court subsequently dismissed on summary judgment.  Uncommongood, Inc., 2024 WL 1068963 (March 6, 2024).  That Juice's claims have survived multiple rounds of dispositive motion briefing (and notably, that UG's counterclaims did not) indicates that this litigation is not simply pretext for harassment, certainly not harassment of UG by Juice.

UG contends that Juice seeks to dismiss this action to avoid an adverse outcome at trial.  Opposition at 12.  In UG's view, Juice cannot advance a winning argument on

---

UG's decision to bring its counterclaims in late 2024, thereby reopening discovery, and Attorney Dreier's misconduct, explains why Ms. Driscoll's deposition did not complete until September 2025.  For UG to now complain of Juice's diligence in bringing the instant Motion is nothing short of indefensible.

[4] See Opposition at 21 ("Juice's assertion of its recent 'confirmation' of UG's financial status as the reason for its late filing of its motion to dismiss is nothing more than a pretext. . . . The Motion to Dismiss is nothing more than a vexatious maneuver designed by Juice to avoid the likely adverse outcome of the trial.") (emphasis added).

the issue of contract rescission, which will necessarily imperil multiple of its claims that turn on the Transfer Agreement having been lawfully rescinded. Id.

UG's position is grossly overstated. Juice's claim of rescission survived summary judgment. See SJ Ruling at 17-19. There, the court ruled that there were issues of fact as to rescission. Id. The rescission issue has been the subject of full briefing and is presently set for oral argument solely on the question of whether the issue is for the jury or the court. How UG deduces that Juice cannot win on the rescission issue is perplexing to this court. It is certainly not clear to this court who will prevail on the issue. That is what trials are for. Because there is no evidence in the record of ill-intent by Juice, the second Zagano factor weighs in Juice's favor.

C. Third Zagano Factor: Progress of Litigation

"Courts applying the Zagano factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate." Laurion v. PHH Mortg. Corp., 671 B.R. 342, 349 (D. Conn. 2025) (quoting Baldanzi v. WFC Holdings Corp., 2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010)). "The standard for concluding that a suit has progressed far enough to weigh against dismissal is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred." Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc., 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013).

The third factor here is ultimately neutral. Though it is true that the parties have litigated this action for the past four years through discovery and summary judgment

8

motion practice, with jury selection set for a 2026 trial, the protracted litigation history here can be attributed to delays largely caused by UG.  See, e.g., supra, section IV.A; Order (Doc. No. 79).  Moreover, as Juice mentions in their Motion, the majority of discovery conducted in the instant action mirrored the discovery required of Juice and produced in the state action, which action UG initiated.  Motion at 8.  UG was not without agency the past four years; they resorted to litigation in the first instance upon the alleged breakdown of their relationship with Juice and caused unnecessary delay when it was named as a defendant in this court.  UG cannot now point to an extensive litigation history significantly of its own doing as a way to escape dismissal.  Given the extensive expenditure in litigating this action spent by both sides, the court finds this factor weighs neither for or against dismissal without prejudice.

      D.  Fourth Zagano Factor: Duplicative Expense of Relitigation

The mere possibility of future litigation does not constitute prejudice to UG.  D'Alto, 100 F.3d at 283.  "Applying a common-sense approach, courts have recognized that resources expended in the initial litigation could likely be of similar use in future relitigation."  Laurion, 671 B.R at 350.  There is no evidence on the record that Juice intends to relitigate its remaining claims at a future date.  Indeed, there is little reason to believe that Juice remains eager to quiet title in the intellectual property at issue given that this dismissal comes on the heels of Juice's determination that UG is out of business and judgment proof.  Motion at 9.  However, even if a second litigation were likely, the efforts expended in both Juice's action and UG's state action would remain useful and would not otherwise be wasted.  For that reason, the fourth factor weighs in Juice's favor.

### E. Fifth Zagano Factor: Adequacy of Juice's Explanation

Finally, the fifth Zagano factor assesses the adequacy of Juice's explanation for the dismissal. Id. Courts examining this factor consider whether the explanation proffered is reasonable. Id. Juice seeks to dismiss the instant action because it has recently determined, based on evidence in discovery, that UG is judgment proof. Motion at 9. As explained earlier in its discussion of Juice's diligence in bringing the Motion, the court is not convinced of UG's argument that the judgment proof argument is pretextual and that Juice learned of UG's financial condition earlier than Juice lets on. UG obfuscated the full picture of its financial condition for years. It is entirely reasonable to the court that Juice would now seek to abandon an action upon information that any award it might receive at trial cannot be collected. For that reason, the fifth Zagano factor weighs in Juice's favor.

Four of the five Zagano factors weigh in Juice's favor and UG has not otherwise shown prejudice sufficient to bar the requested dismissal. For that reason, dismissal without prejudice is warranted.

## V.     CONCLUSION

For the reasons stated above, the Motion to Dismiss the Amended Complaint (Doc. No. 309) is **GRANTED** without prejudice.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of December 2025.

     /s/ Janet C. Hall
Janet C. Hall
United States District Judge